IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Cynthia L. Craighead, | ) | C/A No. 0:10-2410-MBS-PJG |
|             Plaintiff, | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| Michael J. Astrue, Commissioner of Social Security, | ) | |
|             Defendant. | ) | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 DSC et seq. The plaintiff, Cynthia L. Craighead ("Craighead"), brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the defendant, Commissioner of Social Security ("Commissioner"), denying her claim for Disability Insurance Benefits ("DIB"). Having carefully considered the parties' submissions and the applicable law, the court concludes that the Commissioner's decision should be reversed and the case remanded.

**ADMINISTRATIVE PROCEEDINGS**

In April 2007, Craighead applied for DIB, alleging disability beginning September 20, 2005. Craighead's application was denied initially and upon reconsideration, and she requested a hearing before an administrative law judge ("ALJ"). A hearing was held on April 17, 2009, at which Craighead, who was represented by W. Grady Jordan, Esquire, appeared and testified. The ALJ issued a decision on July 8, 2009 denying benefits and concluding that Craighead was not disabled. (Tr. 11-21.)



Craighead was forty-five years old at the time of her alleged disability onset date. (Tr. 115.) She has a college education and past relevant work experience as a computer programmer/analyst and outside sales representative. (Tr. 120, 125.) Craighead alleges disability since September 20, 2005 due to fibromyalgia and depression. (Tr. 119.)

The ALJ found as follows:

1. The claimant meets the insured status requirements of the Social Security Act through June 11, 2011.

2. The claimant has not engaged in substantial gainful activity since September 20, 2005, the alleged onset date (20 CFR 404.1571 *et seq.*).
    * * *
3. The claimant has the following severe impairments: fibromyalgia and depression (20 CFR 404.1520(c)).
    * * *
4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).
    * * *
5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). The claimant is able to lift twenty pounds occasionally and ten pounds frequently. She is able to sit, stand, and walk, each for six hours of an eight-hour workday. Further, the claimant can never climb ladders, ropes, or scaffolds and is limited to occasionally climbing ramps and stairs. She can occasionally balance, stoop, kneel, crouch, and crawl. The claimant must avoid concentrated exposure to temperature extremes and hazards. The claimant presented testimony regarding stress having a significant impact on pain because she does not attempt to figure out problems and complete tasks. Based on the claimant's testimony, she is able to perform low stress work defined as occasional decision-making required and simple 1-2 step functions.
    * * *
6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).
    * * *
7. The claimant was born on [REDACTED], 1960 and was 45 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. (20 CFR 404.1563).



8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

\* \* \*

11. The claimant has not been under a disability, as defined in the Social Security Act, from September 20, 2005 through the date of this decision (20 CFR 404.1520(g)).

(Tr. 13-21.) On July 21, 2010, the Appeals Council denied Craighead's request for review, making the decision of the ALJ the final action of the Commissioner. (Tr. 1-4.) This action followed.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A) and (d)(5), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations require the ALJ to consider, in sequence:

(1) whether the claimant is engaged in substantial gainful activity;

(2) whether the claimant has a "severe" impairment;

*PJG*

(3)  whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4)  whether the claimant can perform [her] past relevant work; and

(5)  whether the claimant's impairments prevent [her] from doing any other kind of work.

20 C.F.R. § 404.1520(a)(4). If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. § 423(d)(2)(A); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The Commissioner may carry this burden by obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's



decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.

## ISSUES

Craighead raises the following issues for judicial review:

A.  The ALJ failed to consider the various factors set forth in 20 C.F.R. § 404.1527(d) in evaluating the opinion of the treating physician.

B.  The ALJ based his decision, at least in part, on the completely inappropriate and astounding testimony of the vocational expert.

(Pl.'s Br., ECF No. 10.)

## DISCUSSION

**A.  Treating Physicians**

Typically, the Social Security Administration accords greater weight to the opinion of treating medical sources because treating physicians are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. § 404.1527(d)(2). However, "the rule does not require that the testimony be given controlling weight." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). Rather, a treating physician's opinion is evaluated and weighed "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment



relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). In the face of "persuasive contrary evidence," the ALJ has the discretion to accord less than controlling weight to such an opinion. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Further, " 'if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight.' " Id. (quoting Craig, 76 F.3d at 590).

The crux of Craighead's argument is that the ALJ erred in failing to apply properly the factors as specified in 20 C.F.R. § 404.1527(d) in evaluating the opinions of Dr. Jennifer Gilroy and Dr. Betty McFadden, Craighead's treating physicians. Craighead argues that the ALJ's findings are not supported by substantial evidence, that the ALJ conformed the evidence to his findings, and that the ALJ selectively discussed or "cherry-picked" the evidence that supported his conclusion.

Upon a thorough review of the record as a whole, the court is unable to determine whether the ALJ's decision with regard to the opinions of Dr. Gilroy and Dr. McFadden is supported by substantial evidence. While an ALJ may not be required to discuss every piece of evidence, in this case the record reveals significant evidence not addressed or acknowledged by the ALJ that does not support the ALJ's decision. See, e.g., Seabolt v. Barnhart, 481 F. Supp. 2d 538, 548 (D.S.C. 2007) ("The ALJ is not required to discuss every piece of evidence, but if he does not mention material evidence, the court cannot say his determination was supported by substantial evidence.").

For example, the record contains treatment notes from Dr. McFadden from 2000 through 2009. It appears that Craighead was treated by Dr. McFadden at Doctors Care from 2000 through



2008 and subsequently at Urgent Care of The Upstate from 2008 through 2009. Further, the record indicates that upon Dr. McFadden's departure from Doctors Care, Dr. Gilroy continued Craighead's treatment at Doctors Care from 2008 through 2009. As the ALJ observed, Dr. Gilroy completed a physical residual functional capacity ("RFC") questionnaire on November 24, 2008 on Craighead's behalf in which she opined that Craighead "could stand less than 2 hours, sit for 2-4 hours, and would need unscheduled breaks." (Tr. 19.) The ALJ also noted that on December 1, 2008, Dr. McFadden issued a statement that she agreed with the limitations imposed by Dr. Gilroy's physical RFC assessment. (Id.) The ALJ found that these assessments were "unsupported and inconsistent with the evidence of record." (Id.) In reaching this conclusion, the ALJ discussed selective aspects of the record that were inconsistent with Dr. Gilroy's and Dr. McFadden's conclusions. Specifically, the ALJ noted that Craighead had reported to Dr. Geneva Hill, a treating physician, on September 11, 2006 that she was " 'doing well over all with minimal pain' as long as she minimized activity and stress and exercised regularly." (Tr. 17.) The ALJ also observed that on April 24, 2007, Craighead reported to Dr. Barbara Brake that her pain was "a 3/10" and was intermittent. (Id.) The ALJ also found that Craighead's activities of daily living, such as running errands, preparing meals, doing laundry, and visiting friends in Charlotte once a week, were inconsistent with the residual functional capacity assessment by Dr. Gilroy and Dr. McFadden and that Craighead's testimony was not credible. (Tr. 18, 19.)

In this case, the ALJ found that Dr. Gilroy's and Dr. McFadden's assessments were unsupported and inconsistent with the evidence of record. In arguing that this decision was unsupported, Craighead points to significant medical evidence supporting their assessments that the ALJ did not discuss or acknowledge.

As an initial matter, Craighead argues that while the ALJ relied on some notes from Dr. Hill to support his finding that Craighead is not disabled, Dr. Hill's records contain many notes that support the opinions of Dr. Gilroy and Dr. McFadden. For example, Craighead points to Dr. Hill's July 9, 2007 notes that indicate Craighead reported difficulty functioning after grocery shopping, that she was productive at home for only two or three hours, and that she had discontinued martial arts and was doing water aerobics. (Tr. 306.) Craighead argues Dr. Hill noted "tenderness to digital palpitation at the occiput, trapezius, supraspinatus, anterior neck, second rib, lateral epicondyle, knees, greater trochanter and gluteal area bilaterally." (Id.) Craighead also argues that the ALJ took portions of Dr. Hill's notes out of context that were not representative of the notes as a whole. For example, Craighead points out that the ALJ's quotation of Dr. Hill's May 1, 2006 report indicating that Craighead was "much better" failed to include the full remark, which was that Craighead was "much better not working and avoiding the stress and persistent sedentary job [] she was doing."[1] (Tr. 245) (Pl.'s Br., ECF No. 10 at 6.)

Craighead also directs the court to multiple medical records from Dr. McFadden not referenced in the ALJ's order that Craighead argues support a finding of disability.[2] (Pl.'s Br., ECF No. 10 at 9-10.) For example, she points to the following notes from Dr. McFadden: an October 9, 2006 note that stated Craighead "tolerates short intervals of activity" (Tr. 380); a November 10, 2006 note stating "literally rocking can't sit still 2° pain, "pain 10/10," and "2 hours a day of

---

[1] Craighead also points to a September 11, 2006 note from Dr. Hill which states that Craighead was "doing well overall with minimal pain as long as activity is limited, stress is limited and she exercises regularly." (Tr. 244); (Pl.'s Br., ECF No. 10 at 6). The court observes that this statement is included in the ALJ's order. (Tr. 17.)

[2] In rejecting the opinions of Dr. Gilroy and Dr. McFadden, the ALJ failed to address any of Dr. McFadden's own treatment notes.



activity" (Tr. 379); a July 25, 2007 record that noted "distraught," "fatigue," and "max 3°/d" (Tr. 375); a September 20, 2007 note that found "FM incapacitating" and "Ultram not helping" (Tr. 374); a December 1, 2008 record that stated "chronic pain due to Fibromyalgia[;] pt. unable to sustain mental/physical exertion ∴ unable to sustain employment. No recognized change in pattern" and recognized that on some days "pain still severe even at max. dosage" (Tr. 491); and a March 9, 2009 note that found "overall, pattern seems to be slowly worsening 2° stress" and "notes feels best during exercise . . . but if [excess] activity, spends days recovering. Seems as if taking longer to recover as well." (Tr. 488). Further, the court observes that on December 1, 2008 after examination, Dr. McFadden found that Craighead could "stand/sit max 30 min then rest 30 min ±."[3] (Tr. 491.)

Although the ALJ may have pointed to some evidence that supports his decision to discount the opinions of Dr. Gilroy and Dr. McFadden, the notes and records discussed above undermine the ALJ's reasons for discounting these opinions and the ALJ's determination that Craighead was not under a disability during this time. While the additional evidence discussed above may not ultimately change the ALJ's decision, at the very least, the failure of the ALJ to address these records that appear to support these opinions prevents the court from determining that the ALJ's decision to discount these opinions is supported by substantial evidence and consistent with controlling law. Because the ALJ's reconsideration of these opinions may affect his final decision on Craighead's

---

[3] The court also notes that although the ALJ afforded great weight to the state agency consultants, who opined that Craighead was "able to perform light exertional level work with postural limitations of occasional climbing stairs and never climbing ladders, ropes, and scaffolds," these opinions appear to have been issued prior to the issuance and inclusion in the record of Dr. Gilroy's and Dr. McFadden's RFC assessments, as well as some of their treatment notes discussed above. (Tr. 18.)



application for disability benefits, the court cannot find that any error is harmless. Therefore, the court is constrained to recommend remanding this matter for further consideration.

**B.     Other Issues**

Reconsideration of Dr. Gilroy's and Dr. McFadden's opinions may affect the remainder of the sequential evaluation, including ALJ's evaluation of Craighead's credibility, his RFC evaluation, and hypothetical question presented to the vocational expert. Therefore, the court need not address Craighead's remaining issues, as they may be rendered moot on remand. See Boone v. Barnhart, 353 F.3d 203, 211 n.19 (3d Cir. 2003) (remanding on other grounds and declining to address claimant's additional arguments).

## RECOMMENDATION

Based on the foregoing, the court recommends that the Commissioner's decision be reversed pursuant to sentence four of 42 U.S.C. § 405(g) and that the case be remanded to the Commissioner for further administrative action as set forth above.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

November 7, 2011
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).